JAP:DCW

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**M10-1156**

- - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

- against -

MARTHA T. CARMONA and
ROBERTO E. CASTILLO,

                    Defendants.

COMPLAINT AND AFFIDAVIT
IN SUPPORT OF ARREST
WARRANT

(18 U.S.C. § 1956(h)

- - - - - - - - - - - - - - - - - -X

EASTERN DISTRICT OF NEW YORK, SS:

           TIMOTHY HATTON, being duly sworn, deposes and says that
he is a Special Agent with the Department of Homeland Security,
Immigration and Customs Enforcement, duly appointed according to
law and acting as such.

           Upon information and belief, on or about September 29,
2010, within the Eastern District of New York, the defendants
MARTHA T. CARMONA and ROBERTO E. CASTILLO, together with others,
did knowingly and intentionally conspire to conduct financial
transactions, which involved proceeds of specified unlawful
activity, to wit, narcotics trafficking, knowing that the
transactions were designed in whole or in part to conceal and
disguise the nature, the location, the source, the ownership and
the control of the proceeds of specified unlawful activity, in
violation of Title 18, United States Code, Section
1956(a)(1)(B)(I).

           (Title 18, United States Code, Section 1956(h))

The source of your deponent's information and the grounds for his belief are as follows:[1]

1.     I have been a Special Agent with ICE and a member of the El Dorado Task Force, which specializes in money laundering operations, for approximately one year.  My information in this case comes from personal involvement with this investigation and conversations with other law enforcement officers and agents.

2.     On or about September 17, 2010, as part of a continuing investigation, agents were conducting a surveillance of MARTHA T. CARMONA's East Elmhurst, New York residence.  As the agents watched, CARMONA left her residence carrying a yellow plastic shopping bag in her hand.  CARMONA then walked to a supermarket located on Astoria Boulevard between 99th Street and 100th Street in East Elmhurst, New York, with the yellow plastic bag in her hand.

3.     While standing in front of the supermarket, CARMONA appeared to make a call on her cellular phone.  A short time later, an orange Nissan automobile pulled up to where CARMONA was standing in front of the supermarket.  After speaking briefly to the driver of the orange Nissan, CARMONA leaned into the passenger side window of the car.  When CARMONA reemerged from inside the car, she was no longer carrying the yellow plastic bag in her hand.

---

[1]     Because the purpose of this affidavit is to state only probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

3

4.    After the driver of the orange Nissan drove away from the supermarket, he was pulled over for a traffic violation by a New York State Police Trooper who is also a member of the El Dorado Task Force.  During a consensual search of the orange Nissan, the Trooper found a yellow plastic bag that matched the bag that CARMONA had been carrying.  Inside the bag, the Trooper discovered United States currency bundled in rubber bands in an aggregate amount of $12,000.

5.    On or about September 29, 2010, while again conducting surveillance of CARMONA's East Elmhurst, New York residence, agents observed CARMONA leaving her residence carrying a black plastic shopping bag.  As the agents watched, CARMONA walked to the intersection of 103rd Street and Northern Boulevard in East Elmhurst, New York while carrying the black plastic shopping bag in her hand.  After reaching the intersection, CARMONA used her cellular phone to place a telephone call.  Thereafter, a white van pulled up to where CARMONA was standing.  CARMONA got into the front passenger side of the van.

6.    After CARMONA got into the white van, the driver of the van drove to the intersection of 103rd Street and 32nd Avenue in East Elmhurst.  There, CARMONA got out of the white van without the black shopping bag.  CARMONA then walked home to her residence.

7.    After the driver of the white van dropped off CARMONA, agents followed the white van for several blocks.

4

Agents then stopped the van, and identified the driver of the van
as ROBERTO E. CASTILLO.

8.    During a non-custodial consensual search of the
white van, agents found a black plastic shopping bag that matched
the black shopping bag that had previously been in CARMONA's
possession.  Inside the black shopping bag, agents discovered
United States currency bundled in rubber bands in an aggregate
amount of $30,000.

9.    CASTILLO was given Miranda warnings which he
appeared to understand and waived.  CASTILLO stated in sum and
substance that he picks up and drops off money on behalf of a
person from Colombia.  CASTILLO also stated that at the direction
of the person in Colombia, he broke down the money into smaller
amounts before depositing the money into numerous bank accounts.
He also wired money to various places through Western Union.
CASTILLO also said he knew that what he was doing with the money
was wrong.

10.   During a consensual non-custodial interview of
CARMONA, she admitted that she had passed a bag full of cash to
CASTILLO.  She also stated in sum and substance that she had
previously passed off cash to others.  CARMONA said that she was
acting on behalf of someone that she had met at a laundromat, and
she acknowledged that this person paid her to pass off money to
others.  CARMONA believed that the money constituted proceeds
from the sale of drugs, and acknowledged that she knew what she
was doing was illegal.

11.   Based upon my training and experience, I know that narcotics traffickers often bundle their proceeds in the manner that the recovered currency was bundled.  Moreover, a subsequent ion scan conducted by law enforcement revealed that the $30,000 that was recovered from the black plastic bag delivered by CARMONA to CASTILLO proved positive for the presence of narcotics residue.  This is of significance in that it demonstrates that the money was, at one time, in close proximity to narcotics, further bolstering my belief that this money constitutes the proceeds of narcotics trafficking.

WHEREFORE, your deponent respectfully requests that the defendants MARTHA T. CARMONA and ROBERTO E. CASTILLO be dealt with according to law.

SPECIAL AGENT TIMOTHY HATTON
Immigration and Customs Enforcement

Sworn to before me this
6ᵗʰ day of October, 2010